IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMETT COLEMAN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 11-1457 |
| | : Magistrate Judge Eddy |
| PENNSYLVANIA STATE POLICE, | : |
| | : |
| Defendant. | : |

### REPLY BRIEF

Contrary to plaintiff's arguments, it is undisputed that PSP did, in fact, conduct an individualized assessment in this case. Dr. Marrone (who developed PSP's seizure protocol and whose medical and occupational expertise were the most significant factors in PSP's decision) stressed that the seizure protocol is **not** a blanket policy but is used as a guideline or framework to help PSP be consistent. (Deft. Exh. 2, p. 53-54.) The protocol is not applied in blanket fashion; rather, the PSP Medical Officers take each case "and evaluate it individually with all the facts based on that case and come up with a decision." (Deft Exh. 2, p. 48 – 50.) Dr. Marrone can and has suspended the protocol good medical evidence confirms no safety issue. (Deft. Exh. 2, p. 42-43, 48-50, 53.)

In this particular situation, Dr. Marrone obtained and reviewed Mr. Coleman's extensive medical records, followed his condition throughout 2010, discussed him with HR staff, and even spoke with Dr. Jahromi, plaintiff's treating neurologist. (Deft Exh. 2, p. 18-20, 60-76, 98, 110-130, 132-138; Exh. 13.)

1

There was no dispute about Mr. Coleman's neurological condition – his seizures were caused by the permanent, traumatic brain injury from his 2009 accident (Deft Exh 2, p 121-122, 148-154), and he had several breakthrough seizures (one life threatening) while on anti-seizure medication (Deft Exh. 2, p.125-127, 154-156).

Thus, there was no need for a physical examination. (Deft. Exh 2, p 148-151.) Rather, the only issue to be addressed was the probability of seizure recurrence under these unique circumstances. (Deft. Exh. 2, p. 149-151.) And these probabilities were known and reported in leading medical research articles (including the *New England Journal of Medicine*) with which Dr. Marrone was familiar. Those research studies show that for a generalized seizure (at least 2 of plaintiff's seizures were generalized), the risk of having a recurrent seizure in the first year is approximately 50%. However, if someone has a recurrent seizure, the risk of recurrent seizures thereafter increases significantly, from 75 to 90%. Further, if someone has a recurrent seizure while on medication, as happened with Mr. Coleman, the risk goes even higher for recurrent seizures, closer to 90%. (Deft Exh 2, p. 23-32.)[1] These studies represent the most current, best medical evidence. (Deft Exh. 15, p. 28-30.)

A physical examination of the employee is not mandatory; nor does a treating physician's conflicting opinion automatically create an issue of fact

---

[1] While plaintiff's treating physician Dr. Jahromi does not accept these studies and statistics, Dr. Sperling, the epilepsy specialist to whom plaintiff was referred by Dr. Jahromi, agreed with them and with Dr. Marrone's assessment, and indicated that the probability of additional seizures after having two is 80 to 85%. (Deft. Exh. 15, p. 16-19; 28-30.) Although Dr. Sperling's opinion came after PSP had made its decision, his opinion "elucidates the very issue the court must assess – whether the opinion that a direct threat existed was *objectively* reasonable." Echazabal v Chevron USA, 336 F.3d 1023, 1033 (9th Cir. 2003).

precluding summary judgment.  Rather, the employer's decision must be based upon reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence.   29 CFR §1630.2.  The testimony of Dr. Marrone and Dr. Sperling clearly satisfy that standard.

The cases cited by plaintiff at pp. 5-6 of his brief involved scenarios where the employer, unlike PSP in this case, failed to produce sufficient evidence of the threat or inability to perform.  While these decisions typically refer to the fact that, among other things, there had been no attempt to personally examine the plaintiff,  none suggest that this factor, standing alone, would be fatal to summary judgment if sufficient, objective evidence or current medical knowledge had been presented.  In fact, EEOC Interpretive Guidance does not **require** a personal examination, but simply provides that relevant evidence in determining whether a direct threat exists "**may** include" input from the individual with the disability.  EEOC v. Burlington N. & Santa Fe RR, 621 F. Supp.2d 587, 602 (W.D. TN 2009).   Likewise, the cases cited at pp. 8-9 of plaintiff's brief do not stand for the proposition that summary judgment cannot be granted when a treating physician opines that his client can safely perform his job.  In fact, in Echazabal, *supra*, the Court stressed that the EEOC's Interpretive Guidance does **not** place special emphasis on treating physicians.  Rather, the weight to be given a treating physician's view will depend on all the circumstances, including the "degree of knowledge the physician may have as to the physical dangers the particular work environment presents."   336 F.3d at 1033, n.11.

In sum, the undisputed evidence in this case establishes a significant risk of substantial harm by permitting plaintiff's employment as a trooper. There was a high risk of seizure recurrence (given Coleman's unique medical situation), and should he suffer a recurrence in a critical situation, there could possibly be catastrophic consequences to him, other troopers or the public. (Exh. 2, p. 25-27, 38.)

Contrary to plaintiff's suggestion, numerous cases have found that summary judgment is appropriate when, as is the case here, the defendant has established that the requested accommodation would be unreasonable or burdensome, or that plaintiff presents a direct threat.  Grosso v. UPMC, 857 F.Supp.2d 517, 537 (W.D. Pa. 2012);  Wurzel v. Whirlpool Corp., 2010 WL 1495197, *8 (N.D. OH.); Gonzales v. City of New Braunfels, 176 F.3d 834, 838 (5th Cir. 1999);  Haas v. Wyoming Valley Healthcare System, 553 F.Supp.2d 390, (M.D. Pa. 2008) (Court entered judgment as a matter of law where evidence of direct threat and unreasonableness of accommodation was clear).

This is particularly so in the context of law enforcement, involving assessment of public safety risks.  In a recent summary judgment ruling, Judge McVerry stressed that "absent evidence of the type of unreasoning prejudice at which the ADA was aimed, the difficult individualized decisions in this unique arena are not well-suited for second guessing by a Court or jury."  McDonald v. PSP et al, 2012 WL 5381403, *12, citing  Diaz v. City of Philadelphia, 2012 WL 1657866, *13 (E.D. Pa.)   See also Wurzel, *supra*, *10 (the Court will not second-

guess an adverse employment action where that action rests on an employer's assessment of conflicting evidence);

The Court's conclusion in <u>Wurzel</u>, that the employer was reacting to the potentially harmful consequences of plaintiff's condition, and not on the basis of bias against persons with the condition, is equally applicable here.  <u>Wurzel</u>, *9, citing <u>EEOC v. Kinney Shoe Corp</u>., 917 F.Supp. 419, 431-32 (W.D. Va. 1996). Granting summary judgment for the employer, that Court held that a reasonable jury could only find that Whirlpool's decision to terminate Wurzel had nothing to do with his diagnosis and everything to do with "the consequences of that condition when it unforeseeably caused spasms of unpredictable duration and effects." <i>Id</i>.

Respectfully submitted,

KATHLEEN G. KANE
Attorney General

<u>   /s/ Mary Lynch Friedline</u>
Mary Lynch Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date:  February 1, 2013